IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


WILLIAM R. PREECE,              §
                               §
          Plaintiff,           §
                               §
v.                             §
                               §      CIVIL ACTION NO. H-06-0715
PHYSICIANS SURGICAL CARE,      §
INC., SYMBION, INC., and       §
SYMBION ACQUISITION SUB, INC., §
                               §
          Defendants.          §


**<u>MEMORANDUM OPINION AND ORDER</u>**


Plaintiff, William R. Preece, filed this action in the 80th Judicial District of Harris County, Texas, on January 26, 2006, against defendants, Physicians Surgical Care, Inc., Symbion, Inc. ("Symbion"), and Symbion Acquisitions Sub, Inc. ("Symbion Sub"), in a case arising out of a dispute about employer-granted stock options.  Defendants removed the action to this court on March 3, 2006, pursuant to 28 U.S.C. §§ 1332 and 1441(a) (Docket Entry No. 1).  Pending before the court are Defendants' Motion to Dismiss (Docket Entry No. 14), Defendants' Request for Judicial Notice in Support of Their Motion to Dismiss (Docket Entry No. 15), Plaintiff's Motion to Remand (Docket Entry No. 16), Subject to Motion to Remand Plaintiff's Response to Defendants' Motion to Dismiss (Docket Entry No. 17), Subject to Motion to Remand and Motion for Leave, Plaintiff's First Amended Petition (Docket Entry

No. 18), Defendants' Reply Memorandum in Support of Their Motion to Dismiss (Docket Entry No. 19), Defendants' Opposition to Plaintiff's Motion to Remand (Docket Entry No. 20), and Plaintiff's Stipulation (Docket Entry No. 21).  For the reasons set forth below, plaintiff's motion to remand will be denied, plaintiff's motion fo file his first amended petition will be granted, and defendants' motion to dismiss will be granted.

## I.  **Factual Allegations**

Plaintiff alleges the following.[1]  Plaintiff was hired by Physicians Surgical Care, Inc. ("PSC") as an employee in October of 1999.  On November 30, 1999, PSC entered into a stock option agreement with plaintiff granting him an option to purchase up to 50,000 shares of PSC's common stock at an exercise price of $2.36 per share.  On April 19, 2000, PSC granted an option to purchase an additional 50,000 shares of PSC's common stock at an exercise price of $1.00 per share.  The stock option agreements provide that the stock options expire 90 calendar days from the date of termination of plaintiff's employment if plaintiff is terminated for reasons other than death, disability, or retirement.

On January 11, 2002, the employment relationship between PSC and plaintiff was terminated for reasons other than death,

---

[1]Plaintiff's Original Petition, Exhibit A attached to Notice of Removal, Docket Entry No. 1, pp. 2-5; Subject to Motion to Remand and Motion for Leave, Plaintiff's First Amended Petition, Docket Entry No. 18, pp. 2-5.

disability, or retirement without prejudice to plaintiff's rights under the stock option agreements.  On March 7, 2002, within the 90-day period for exercise of stock options under the stock option agreements, PSC merged with defendant Symbion and its wholly-owned subsidiary Symbion Sub.

As a result of the merger each share of PSC common stock was converted into .414423 shares of Symbion stock, and all outstanding and unexercised rights under PSC employee stock option agreements were automatically converted into options to purchase common shares of Symbion stock, provided that any material rights of a holder of PSC employee stock options were preserved upon the conversion.

Plaintiff sought to confirm the true number of shares of Symbion stock he was entitled to and to obtain exercise price information so that he could exercise his stock options.   On June 8, 2004, Symbion asserted that plaintiff's options had expired and refused to provide plaintiff the requested information. Plaintiff filed suit on January 26, 2006.

## II.  **Plaintiff's Motion to Remand**

Defendants' Notice of Removal asserts jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332 and 1441(a), because plaintiff is a citizen of Texas, and defendants are corporate citizens of Tennessee.[2]   Although plaintiff does not dispute that he is a citizen of the State of Texas and the

_____

[2]Defendants' Notice of Removal, Docket Entry No. 1, ¶ 3.

defendants are corporate citizens of the State of Tennessee, plaintiff argues that this action should be remanded to state court because the amount in controversy is less than $75,000.[3]

## A.   Applicable Law

Federal district courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are diverse.  28 U.S.C. § 1332.  Since the diversity of the parties is not in dispute, the sole issue in this case is whether the amount in controversy exceeds $75,000.

The removing party bears the burden of establishing that federal jurisdiction exists.  De Aguilar v. Boeing Co. (De Aguilar II), 47 F.3d 1404, 1408 (5th Cir.), cert. denied, 116 S.Ct. 180 (1995).  "[W]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000]."  Id. at 1409 (quoting De Aguilar v. Boeing Co. (De Aguilar I), 11 F.3d 55, 58 (5th Cir. 1993)).

"[J]urisdictional facts that support removal must be judged at the time of removal, and any post-petition affidavits are allowable only if relevant to that period of time."  Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (1995).  Once diversity jurisdiction has attached, it cannot be divested by the voluntary reduction of the amount in controversy below jurisdiction.  Id. at 1336.  See also

---

[3]Plaintiff's Motion to Remand, Docket Entry No. 16.

<u>St. Paul Mercury Indemnity Co. v. Red Cab Co.</u>, 58 S.Ct. 586
(1938).[4]  Although a unilateral, post-removal stipulation does not
deprive the removal court of jurisdiction, a post-removal
stipulation may be considered in determining whether the case was
removable if the stipulation is offered to clarify an ambiguous
petition and is not offered to reduce the initial amount in
controversy.  <u>See</u> <u>Marcel v. Pool Co.</u>, 5 F.3d 81, 85 (5th Cir. 1993)
(citing <u>Asociacion Nacional de Pescadores a Escala o Artesanales
de Colombia (ANPAC) v. Dow Quimica de Colombis S.A.</u>, 988 F.2d 559,
565 (5th Cir. 1993), <u>cert. denied</u>, 114 S.Ct. 685 (1994), <u>abrogated
on other grounds by</u> <u>Marathon Oil Co. v. Ruhrgas</u>, 145 F.3d 211 (5th
Cir. 1998), <u>rev'd on other grounds</u>, 199 S.Ct. 1563 (1999)).

The Fifth Circuit has established an analytical framework for
resolving disputes concerning the amount in controversy in actions
removed from state courts based on diversity jurisdiction.  <u>See</u>
<u>Gebbia v. Wal-Mart Stores, Inc.</u>, 233 F.3d 880, 883 (5th Cir. 2000)
(citing <u>Luckett v. Delta Airlines, Inc.</u>, 171 F.3d 295, 298 (5th
Cir. 1999).  When the plaintiff has not specified the numerical
value of the damage claim "the removing defendant must prove by a
preponderance of the evidence that the amount in controversy

_____

[4]In <u>St. Paul Mercury</u>, 58 S.Ct. at 592-593, the plaintiff
originally alleged damages above the jurisdictional amount in state
court but amended the complaint in federal court to state less than
the required amount.  The Court held that the subsequent amendment
could not strip the federal court of jurisdiction, provided that
the original claim for damages was made in good faith.

exceeds $75,000." <u>Luckett</u>, 171 F.3d at 298 (citing <u>De Aguilar I</u>,

11 F.3d at 58).

> The defendant may make this showing in either of two
> ways:  (1) by demonstrating that it is "facially
> apparent" that the claims are likely above $75,000, or
> (2) "by setting forth the <u>facts</u> in controversy --
> preferably in the removal petition, but sometimes by
> affidavit -- that support a finding of the requisite
> amount."

<u>Id.</u> (quoting <u>Allen</u>, 63 F.3d at 1335).  "[I]f it is facially

apparent from the petition that the amount in controversy exceeds

$75,000 at the time of removal, post-removal affidavits,

stipulations, and amendments reducing the amount do not deprive the

district court of jurisdiction."  <u>Gebbia</u>, 233 F.3d at 883 (citing

<u>St. Paul Mercury</u>, 58 S.Ct. at 592-593, <u>ANPAC</u>, 988 F.2d at 565,

<u>Allen</u>, 63 F.3d at 1336, and <u>De Aguilar II</u>, 47 F.3d at 1407).

**B.   Analysis**

   1.   <u>Facially Apparent</u>

   Defendants argue, based on plaintiff's Original Petition, that

it is facially apparent that the amount in controversy exceeds

$75,000.[5]  Although plaintiff has filed a First Amended Petition

subject to his motion to remand,[6] the court will only examine

plaintiff's Original Petition because jurisdictional facts are

judged at the time the petition is filed.  <u>St. Paul Reinsurance</u>,

---

[5]Defendants' Opposition to Plaintiff's Motion to Remand,
Docket Entry No. 20, p. 2.

[6]Subject to Motion to Remand and Motion for Leave, Plaintiff's
First Amended Petition, Docket Entry No. 18.

134 F.3d at 1253–54.  Plaintiff's Original Petition seeks declaratory relief.[7]  In an action for declaratory relief the amount in controversy is the value of the right to be protected. Id. at 1253.  Plaintiff and defendant dispute the value of the rights plaintiff seeks to protect.

Plaintiff asks the court to make a number of declarations, including declarations that "[p]laintiff holds present exercisable options to purchase 9,354 shares of common stock of Symbion, Inc., stock at an exercise cost of $168,325.23" and that "[p]laintiff is entitled to his reasonable, necessarily incurred, equitable and just attorneys fees[.]"[8]  The reasonable interpretation of the term "exercise cost" is the cost of purchasing the 9,354 shares at the option price.  The value of that right as stated in the Original Petition, therefore, is $168,325.23, well over the $75,000 jurisdictional requirement.  Plaintiff's request for a declaration that he is entitled to attorney's fees would raise the amount in controversy even more.

Plaintiff also pleads an alternative request for relief in the form of damages.  Because plaintiff may recover under either the primary or the alternative requests for relief, the court may examine the alternative relief requested to determine if the amount in controversy is likely to exceed $75,000.  See Kirby Lumber Corp.

---

[7]Plaintiff's Original Petition, Exhibit A attached to Notice of Removal, Docket Entry No. 1, p. 5.

[8]Id. at p. 6.

<u>v. Karpel</u>, 233 F.2d 373, 376 (5th Cir. 1956) (holding that plaintiffs could recover on alternative claim and prayer for damages). The alternative request for relief seeks damages for breach of contract, common law fraud, violations of § 27.01 of the Texas Business and Commerce Code, and imposition of a constructive trust.[9] Section 27.01 of the Texas Business and Commerce Code permits recovery of attorney's fees. Tex. Bus. Comm. Code. Ann. § 27.01(e) ("Any person who violates the provisions of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees."). Plaintiff's common law fraud cause of action includes a request for exemplary or punitive damages.

If a state statute provides for attorney's fees, these fees are included as part of the amount in controversy. <u>Manguno v. Prudential Property and Cas. Ins. Co.</u>, 276 F.3d 720, 723 (5th Cir. 2002). Even if the value of plaintiff's right under the declaratory judgment was less than $75,000, attorney's fees and exemplary damages could easily inflate his potential recovery to well over $75,000, especially since there are three defendants against whom such damages could be assessed. See <u>Allen</u>, 63 F.3d at 1336 (holding that face of the complaint supports the assertion of federal jurisdiction if plaintiff would collect more than the jurisdictional amount by successfully asserting claim for punitive damages). <u>See also</u> Tex. Civ. Prac. & Rem. Code Ann. § 41.008

---

[9]Plaintiff's Original Petition, Exhibit A attached to Notice of Removal, Docket Entry No. 1, pp. 6-8.

(limiting exemplary damages against a defendant to "(1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000").

Because both the primary and alternative requests for relief in plaintiff's Original Petition would likely exceed $75,000, the court concludes that defendants have demonstrated by a preponderance of the evidence that it is facially apparent from plaintiff's petition that his claims are likely above $75,000.

## 2.   Other Evidence

The court relies on "summary judgment-type evidence" to determine the amount in controversy when it is not "facially apparent" from the complaint whether plaintiff's claim exceeds $75,000.  St. Paul Reinsurance, 134 F.3d at 1253.  Although it is facially apparent that plaintiff's claims exceed $75,000, because both parties make arguments based on an affidavit submitted by plaintiff, the court will address the arguments.  Plaintiff's Motion to Remand argues that the amount in controversy is $58,275.42.[10]  Plaintiff derives this figure from calculations that rely on undefined terminology, an ambiguous distinction, and an unexplained reduction in share numbers.  Plaintiff's affidavit states that the $168,325.23 figure referred to in his original

---

[10]Plaintiff's Motion to Remand, Docket Entry No. 16, Attachment 1.

petition is the "exercise price," which plaintiff insists has no bearing on the value of the claim.  Instead, plaintiff argues that the value of the claim can be calculated by subtracting the stock option exercise price of $10.73 per share from $23.19, the market price per share on March 3, 2006.  This yields $12.46, which plaintiff multiplied by the number of shares in question, 4,677, to come up with a value of $58,275.42.

It is unclear exactly what plaintiff means when he says that the figure in the original complaint is the "exercise price," especially since plaintiff later refers to his option cost of $10.73 per share as the "exercise price."  In addition, the petition actually states that the $168,325.23 figure represents the "exercise cost" not the "exercise price."  Plaintiff has not defined any of the terms or explained how they differ.

There is another problem with plaintiff's calculations apart from the dubious distinction regarding exercise price.  The number of shares plaintiff lists at issue in the affidavit differs from the number of shares at issue as stated in plaintiff's Original Petition.  Plaintiff's Original Petition seeks a declaration that plaintiff holds present exercisable options to purchase 9,354 shares of stock, not 4,677 shares.[11] Using plaintiff's own calculations and substituting the number of shares in the petition, the

---

[11]See Plaintiff's Original Petition, Exhibit A attached to Notice of Removal, Docket Entry No. 1, p. 6.

value of plaintiff's right climbs to $116,550.84, significantly above the jurisdictional floor for federal court.

Since the court concludes that defendant has established by a preponderance of the evidence that the amount in controversy is likely to exceed $75,000, plaintiff can only show that removal is improper by establishing to a legal certainty that when he filed suit the amount in controversy was less than $75,000. De Aquilar II, 47 F.3d at 1411.  In Texas "litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, St. Paul [Mercury] makes later filings irrelevant."  Id. at 1412.

Plaintiff did not file a binding stipulation or an affidavit limiting the scope of his recovery with his original petition. Plaintiff did, however, file such an affidavit in response to Defendants' Reply to his Motion to Remand.  In his affidavit, "[p]laintiff stipulates and agrees that he will not seek a recovery in this case with the value of greater than $75,000.00, excluding interest and costs."[12]

A post-removal stipulation is relevant only to the extent that it clarifies ambiguity about the amount in controversy at the time of removal. See Gebbia, 233 F.3d at 883.  Plaintiff's post-removal affidavit reducing the amount to below $75,000 cannot deprive the court of jurisdiction that has already attached.  Id. (citing

---

[12]Stipulation, Docket Entry No. 21.

St. Paul Mercury, 58 S.Ct. at 592-93).  See also Allen, 63 F.3d at 1336.  The assertion that plaintiff "will not seek a recovery" with a value of greater than $75,000 shows that plaintiff is limiting his damages to $75,000 or less to defeat federal jurisdiction. Accordingly, the court concludes that plaintiff has not established to a legal certainty that the amount in controversy is less than $75,000.

### III.  **Motion to Dismiss**

Having determined that jurisdiction exists in this forum, the court now turns to plaintiff's motion for leave to amend his petition and defendants' motion to dismiss.  Plaintiff has already filed its First Amended Petition, subject to the court's grant of leave to amend.  Plaintiff is entitled to amend his complaint once as a matter of right before a responsive pleading is served.  Fed. R. Civ. P. 15(a).  Because defendants have not filed an answer, the court will grant plaintiff's motion.

Plaintiff's First Amended Petition states causes of action for declaratory relief and, in the alternative, for breach of contract. Plaintiff's First Amended Petition does not include causes of action under Texas Business and Commerce Code § 27.01, common law fraud, or a request for imposition of a constructive trust.

### A.  **Applicable Law**

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an

-12-

action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom</u> <u>Cloud v. United States</u>, 122 S.Ct. 2665 (2002). "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 998 (2002) (quoting <u>Hishon v. King & Spalding</u>, 104 S.Ct. 2229, 2232 (1984)). <u>See also</u> <u>Conley v. Gibson</u>, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

"However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" <u>Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana</u>, 252 F.3d 781, 786 (5th Cir.) (quoting <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir. 1993)), <u>cert.</u> <u>denied</u>, 122 S. Ct. 464 (2001). Complaints "'must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain

-13-

allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 3 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1216 (2d ed. 1990)). Although dismissal of a claim under Rule 12(b)(6) is generally disfavored, the court should exercise its power to dismiss a complaint if it lacks an allegation regarding an element required to obtain relief. Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citations omitted).

While federal law establishes the standards for Rule 12(b)(6) dismissal, in a diversity case this court looks to Texas law and its choice of law principles in determining what state's law applies. Erie Railroad Co. v. Tompkins, 58 S.Ct. 817 (1938); General Accident Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd., 288 F.3d 651, 653 (5th Cir. 2002). Both parties apply Texas law to the facts of this case, and the court agrees that Texas law governs.

**B.   Analysis**

Defendants move to dismiss plaintiff's causes of action for declaratory relief and breach of contract under Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff has failed to state a claim upon which relief can be granted.[13] Defendants argue

---

[13]Defendants' Motion to Dismiss also makes arguments relevant to plaintiff's common law fraud cause of action, the Texas Business and Commerce Code § 27.01 cause of action, and the request for
(continued...)

-14-

that plaintiff's claims fail as a matter of law under the terms of the relevant contracts.

The contracts at issue are plaintiff's two Stock Option Agreements, the Merger Agreement between Symbion and PSC, and the Stock Option Plan.  Plaintiff objects to the court's consideration of these documents because they are hearsay, they are not proper for judicial notice, they are incomplete, and consideration of the documents converts the Rule 12(b)(6) motion into one for summary judgment.

Plaintiff is correct that the documents in question are not a proper subject for judicial notice under Federal Rule of Evidence 201(b).  See Fed. R. Evid. 201(b) ("[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").  See also Scanlan v. Texas A&M University, 343 F.3d 533, 537 (5th Cir. 2003).

The court may nevertheless consider the documents without treating the motion as one for summary judgment under Rule 56(c).  In analyzing a motion to dismiss under Rule 12(b)(6) a district

---

[13](...continued)
imposition of a constructive trust.  See Defendants' Motion to Dismiss, Docket Entry No. 14, pp. 6-7.  The court will not address these arguments because plaintiff's First Amended Petition does not include these causes of action.

court generally limits its review to the pleadings, including attachments thereto. Fed. R. Civ. P. 12(b)(6). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). Plaintiff's First Amended Petition refers to each of them, and each are central to plaintiff's claims. See Kane Enterprises v. MacGregor (USA) Inc., 322 F.3d 371, 374 (5th Cir. 2003).

In the event the court considers the documents in question, plaintiff has requested additional time to conduct discovery.[14] Discovery is not warranted, however, unless there is ambiguity in the contracts. Construction of an unambiguous contract is a matter of law for the court. Buys v. Buys, 924 S.W.2d 369, 372 (Tex. 1996). If a contract is worded so that it can be given a definite legal meaning, then it is not ambiguous. McMillan v. Dooley, 144 S.W.3d 159, 175 (Tex. App. -- Eastland 2004, pet. denied). Language is given its plain grammatical meaning unless the intentions of the parties would be defeated by doing so. Id. In construing a contract, the court considers the writing as a whole in an effort to give effect to all of the provisions of the

---

[14]Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 17, p. 3.

contract.  Forbau v. Aetna Life Ins. Co, 876 S.W.2d 132, 133 (Tex. 1994).  The court's primary concern is to ascertain the true intentions of the parties as expressed in the instrument.  Id.

The Stock Option Agreements provide an expiration date for plaintiff's stock options.  Since plaintiff was terminated for reasons other than death, disability, or retirement, but not for cause, his stock options expired "ninety (90) calender days from the date of termination[.]"[15]  Plaintiff's Stock Option Agreements also provide that plaintiff is bound to the terms of the relevant Stock Option Plans,[16] and "in the event of a conflict between the terms of the Plan and the terms of this Agreement, the terms of the Plan shall control."[17]

───────────────

[15]PSC Stock Option Agreement Under the 1997 Employee Stock Option Plan ("Stock Option Agreement I"), § 5(d), Exhibit 1 attached to Defendants' Request for Judicial Notice, Docket Entry No. 15; PSC Stock Option Agreement Under the 1999 Second Amended and Restated Stock Option Plan ("Stock Option Agreement II"), § 5(d), Exhibit 2 attached to Defendants' Request for Judicial Notice, Docket Entry No. 15.

[16]Defendants attached to their motion the PSC Second Amended and Restated 1999 Stock Option Plan but not the PSC 1997 Employee Stock Option Plan.  See Request for Judicial Notice in Support of Defendants' Motion to Dismiss, Exhibit 4, Docket Entry No. 15.

Stock Agreement I is governed by the 1997 Plan and Stock Agreement II is governed by the 1999 Plan.  The Plans, however, apparently do not differ in any relevant respect because plaintiff's First Amended Petition does not distinguish between them when quoting Plan provisions.  The court therefore refers jointly to the 1997 and the 1999 Plans as the "Stock Option Plan."

[17]Stock Option Agreement I, § 8, Exhibit 1 attached to Defendants' Request for Judicial Notice, Docket Entry No. 15.; Stock Option Agreement II, § 8, Exhibit 2 attached to Defendants' Request for Judicial Notice, Docket Entry No. 15.

Plaintiff argues that the Stock Option Plan cancels the stock option expiration date contained in the Stock Option Agreements. Plaintiff's arguments are based, however, on a provision of the Stock Option Plan that is not applicable to this situation. Section 10 of the Stock Option Plan, titled "Change in Stock and Adjustments," sets forth various scenarios affecting employee stock options and spells out how those changes affect stock options.  One of those situations is a merger of "one or more corporations into the Company," spelled out in the third paragraph of section 10, which states:

> After a merger of one or more corporations into the Company or after a consolidation of the Company and one or more corporations in which the Company is the surviving corporation, each holder of an outstanding Stock Option, upon exercise of such Stock Option, shall be entitled to receive (at no additional cost but subject to any required action by stockholders) in lieu of the number and class of shares of Common Stock with respect to which such Stock Option is exercisable, the number and class of shares of stock (or other securities or consideration) to which such holder would have been entitled pursuant to the terms of the agreement of merger or consolidation if, immediately prior to such merger or consolidation, such holder had been the holder of record of the same number and class of shares of Common Stock which he would have otherwise received upon exercise of such Stock Option.[18]

PSC merged with Symbion Sub on March 7, 2002.  In the merger Symbion Sub ceased to exist, PSC survived, and PSC became a wholly owned subsidiary of Symbion.[19]   The merger converted PSC stock

---

[18]Stock Option Plan, § 10, Exhibit 4 attached to Defendants' Request for Judicial Notice, Docket Entry No. 15.

[19]Merger Agreement, Article I, § 1.1, Exhibit 3 attached to Defendants' Request for Judicial Notice, Docket Entry No. 15.

-18-

options into Symbion stock options.[20]  Plaintiff admits that "the merger of March 7, 2002, was a merger 'of one or more corporations into the Company while unexercised stock options remain outstanding under the Plan.'"[21]  But instead of applying paragraph three of the Stock Option Plan, quoted above, plaintiff looks to the fourth paragraph of section 10 to determine the effect of the change on plaintiff's stock options.[22]  The fourth paragraph, however, only applies "[i]f the Company is merged into or consolidated with another corporation under circumstances where the Company is not the surviving corporation, or if the Company is liquidated or sells or otherwise disposes of substantially all of its assets to another corporation[.]"[23]  The structure of paragraphs three and four of section 10 is disjunctive, not conjunctive, so that if one paragraph applies, the other does not.  Section 10 describes a number of different changes that could occur and provides rights and consequences pursuant to each change.  In this case, the Company was the surviving corporation, and plaintiff's arguments based on the fourth paragraph are inapplicable.

The third paragraph of section 10 of the Stock Option Plan unambiguously spells out what plaintiff is entitled to in a merger

---

[20]*Id.* at Article III.

[21]Subject to Motion to Remand and Motion for Leave, Plaintiff's First Amended Petition, Docket Entry No. 18, p. 3.

[22]Subject to Motion to Remand, Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 17, p. 6.

[23]Stock Option Plan, § 10, Exhibit 4 attached to Defendants' Request for Judicial Notice, Docket Entry No. 15.

of this type:  stock options equivalent to those he would have received had he exercised his stock options immediately prior to the merger.  Plaintiff's employment with PSC was terminated on January 11, 2002.  Plaintiff's stock options expired by their terms 90 days after his employment with PSC was terminated.  Nothing in the Stock Option Plan conflicts with the Stock Option Agreements or changes the expiration date for plaintiff's stock options.

Plaintiff's First Amended Petition omits the date on which plaintiff attempted to exercise his stock options.  The Petition does, however, state that Symbion denied plaintiff's request to exercise stock options on June 8, 2004.[24]  Despite the absence of plaintiff's request date, there is no allegation that defendants took an inordinate amount of time in responding to plaintiff's request, making it apparent that plaintiff attempted to exercise said options well after they expired in April of 2002.  Because plaintiff has no right to exercise expired stock options under the Stock Agreements or the Stock Plan, the court concludes that plaintiff has failed to state a cause of action for declaratory relief or breach of contract.

## IV.  Conclusions and Order

For the reasons explained above, the court concludes that defendants have established by a preponderance of the evidence that the amount in controversy in plaintiff's Original Petition is

---

[24]Subject to Motion to Remand and Motion for Leave, Plaintiff's First Amended Petition, p. 2, Docket Entry No. 18.

likely to exceed $75,000, and that plaintiff has failed to establish to a legal certainty that the amount in controversy is less than $75,000. This court, having jurisdiction over the case, has determined that plaintiff's First Amended Petition fails to state a cause of action for declaratory relief or breach of contract.

Accordingly,

1.  Plaintiff's Motion to Remand (Docket Entry No. 16) is **DENIED**.

2.  Subject to Motion to Remand and Motion for Leave, Plaintiff's First Amended Petition (Docket Entry No. 18) is **GRANTED**.

3.  Defendants' Motion to Dismiss (Docket Entry No. 15) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 26th day of May, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE